# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs at Knoxville April 23, 2013

## STATE OF TENNESSEE v. UPTON DABNEY, JR.

**Appeal from the Criminal Court for Putnam County**
**No. 11-0834    Leon C. Burns, Jr., Judge**

**No. M2012-01719-CCA-R3-CD - Filed July 25, 2013**

The Defendant, Upton Dabney, Jr., pleaded guilty to sexual exploitation of a minor, a Class C felony. *See* T.C.A. § 39-17-1003 (2010). Although the Defendant agreed to a six-year sentence with the manner of service to be determined by the trial court, the court sentenced the Defendant as a Range I, standard offender to one year's confinement and ten years on community corrections. On appeal, the Defendant contends that (1) his ten-year community corrections sentence is excessive and (2) the trial court erred by ordering one year's confinement. We reverse the ten-year community corrections sentence and remand the case for the trial court to enter a judgment reflecting a sentence of one year's confinement and five years on community corrections.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed;
Case Remanded**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Brent O. Horst, Nashville, Tennessee, for the appellant, Upton Dabney, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark Bryan Thornton, Assistant Attorney General; Randall A. York, District Attorney General; and Beth Elana Willis, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

At the plea submission hearing on March 22, 2012, the State summarized the facts of the case as follows:

Mr. Dabney was originally charged with a "B" felony, being in possession of more than 100 images of child pornography. Sergeant Yvette Demming, with the Cookeville Police Department, was able to . . . connect to Mr. Dabney's IP address associated with a particular computer. During that time, Sergeant Demming saw . . . child pornography that was in possession of Mr. Dabney. . . . His IP address confirmed where he lived, confirmed the address, things of that nature. She obtained a search warrant, and . . . they conducted a search of his home. During that time, he was interviewed by Sergeant Demming[.] [H]e gave a lengthy detailed statement about how he was able to come into possession of that pornography, code names that he would use to find particular pictures. He admitted to having a computer program on his computer . . . to share child pornography with other individuals who might be on line at that time. A lot of his devices were confiscated and were examined by particular individuals, and met the statutory requirements. . . .

Although the Defendant disputed some of the facts, he admitted to "a great deal" of them and conceded the State had sufficient facts to support the guilty plea. The parties agreed to a six-year sentence with the manner of service to be determined by the trial court.

At the sentencing hearing, the presentence report was received as an exhibit. The report stated that the Defendant received out-of-state speeding tickets on August 6, 2002, and February 7, 2004. The Defendant reported that he obtained a bachelor's degree and a masters of science in physical education. The Defendant lived with his parents, who suffered from heart- and stroke-related health problems. The Defendant reported serving in the United States Air Force from 1992 to 1996.

The Defendant underwent a psychosexual evaluation, which was attached to the presentence report. The Defendant reported no sexual abuse during his childhood or substance or alcohol abuse. He stated that he suffered from depression and migraines and that he previously suffered from thyroid cancer. The Defendant reported that while he was in the Air Force, he had sexual relations with a fifteen-year-old girl, his youngest sexual partner. He said that he was twenty-five years old at the time and that he "lost a stripe for his actions." He claimed to have had more than ten sexual partners. He admitted downloading pornography to his computer but denied downloading child pornography, although he agreed child pornography was found in a shared electronic file folder connected to a file-sharing program account.

The psychosexual evaluation reported that the Defendant showed some elevation in the pragmatist/manipulator area, which indicated that the Defendant had a positive attitude

generally but behaved in a manipulative manner. He showed "some problems" in the areas of sexual entitlement and children being sexually attractive and showed signs of sexually assaultive behavior toward children and women. The evaluator concluded that the Defendant "could be a good candidate for community based supervision with sex offender specific treatment[.]"

Janna Governale testified that she prepared the presentence report. She said that the Defendant passed two drug screens during her investigation. On cross-examination, Ms. Governale stated that although the Defendant failed to provide documentation of his military service, she did not believe the Defendant was dishonest.

Cookeville Police Sergeant Yvette Demming testified that on June 8, 2009, she began an undercover internet investigation and that she searched for people who possessed, distributed, manufactured, or shared child pornography. She said that she identified an IP address linked to a particular computer and that the computer used a file-sharing program to share digital files with other individuals on the Internet. She said that the file-sharing program allowed her to look at the files on the computer and that she saw file names indicative of child pornography. She said the internet provider identified the subscriber as the Defendant. She said that she investigated the Defendant and gathered enough information to obtain a search warrant for his computer.

Sergeant Demming testified that she spoke to the Defendant during the search of his home, that he seemed comfortable, and that he was forthcoming about information related to why the police were at his home. She said the Defendant admitted his computer contained child pornography and explained many of the images were saved to external hard drives to free memory on his computer. She said the Defendant explained he used file-sharing programs to download the images. The Defendant told her that he looked at child pornography because he was single and did not want to sleep with "random women." The Defendant said looking at the images prevented his contracting sexually transmitted diseases. Sergeant Demming stated that the Defendant said he had been interested in child pornography for a long time and had a special interest in rape depictions. She stated that the Defendant said he looked for images showing women who resembled his childhood crushes and admitted masturbating while viewing the images. The Defendant told Sergeant Demming that he frequented a website that allowed viewers to watch others perform sexual acts. She said the Defendant admitted he watched a fifteen- or sixteen-year-old female masturbate on that website, although he denied asking the girl to perform the act.

On cross-examination, Sergeant Demming testified that the Defendant was cooperative and invited her into his home when she arrived with the search warrant. She agreed the Defendant's statement that he viewed the images because he was single was an

explanation, not a justification.  She said she did not have evidence showing that the Defendant manufactured or produced child pornography or engaged in sexual relations with a child.

Sergeant Demming testified that the Defendant's admitting he masturbated while viewing the images was specific to child pornography and that she did not ask about adult pornography.  She agreed the interview was not recorded.  She said she did not know how the Defendant concluded that the young female was fifteen or sixteen years old.  She agreed it was possible the girl looked young but was an adult.

Cookeville Police Lieutenant Carl Sells testified that he helped execute the search warrant at the Defendant's home.  He found one laptop computer, one desktop computer, four external hard drives, three or four flash drives, one camera, one wireless router, and one modem.  He said he examined the external hard drives and found over 100 video recordings of child pornography.  He described the recordings and said the images on the computer involved minor children engaged in various types of sexual conduct.

On cross-examination, Lieutenant Sells testified that the Defendant's computer also contained adult pornography. He agreed that a file might be sent to someone's computer without the owner's selecting a particular file.  He agreed that a generic search term such as "nude girls" might result in child pornography.

The Defendant testified that he was not convicted of a crime regarding his having a sexual relationship with a fifteen-year-old girl while in the Air Force and that he was not discharged from the Air Force.  He said that the Air Force "removed a stripe" and reduced his income and that he was honorably discharged from the Air Force.  He said the incident had never shown up during a routine background check but volunteered the information to Ms. Governale.  He stated that when he told Ms. Governale he masturbated while watching pornography, he was referring to adult pornography.  He denied telling her that he masturbated to child pornography.

The Defendant testified that child pornography was on his computer because he used a general search term that resulted in child and adult pornography being downloaded to his computer.  He denied having a sexual interest in child pornography.  He called it a "blanket download" and said he had to sort through the files after they were downloaded to his computer.  He said he had not viewed every downloaded file.  He admitted watching "a couple" of the child pornography videos out of "morbid curiosity."

The Defendant testified that he lived with his elderly parents, who suffered declining health, and that he provided them full-time care.  He said his siblings could not provide full-

-4-

time care for his parents because they were married, had children, and did not live nearby. He denied having a girlfriend.

On cross-examination, the Defendant testified that although the child pornography files he viewed were accidently downloaded to his computer, he purposefully viewed them. He stated later, though, that some of the child pornographic images were downloaded intentionally. He said he did not understand why people were interested in child pornography. He admitted knowing he possessed 100 videos and sixty-two photographs of child pornography.

The Defendant testified that he searched for adult pornography by using the search terms "teen," "rape," and "XXX." He disagreed that "teen" failed to find adult pornography and said that several adult pornography actresses looked like teenagers. He denied viewing all the files downloaded to his computer but took "full responsibility" for possessing the images.

The Defendant testified that he suspected the police were at his home for his downloading images from the Internet without paying for them and that he did not know the reason the police were there. He said that although Sergeant Demming talked about child pornography, he talked about adult pornography. He agreed that Sergeant Demming asked him about child pornography and that he told her the images on his computer contained people under the age of eighteen. He agreed that "a lot sick images" were downloaded to his computer and that he would have looked at the images to know they were sick and involved children. He said he never denied viewing some of the images but denied fantasizing about children. He said that the fantasy was about downloading images of women who reminded him of people from his past. He stated that he told Sergeant Demming that he watched a video showing a fifteen-year-old girl masturbate and that watching it was inappropriate.

Dawn Dabney, the Defendant's sister, testified that she lived in Weber City, Virginia and that their sister lived in Memphis, Tennessee. She said she taught at a college in the Weber City area and did not live nearby. She said her sister had shared custody of her sister's children with her ex-husband and could not move to care for their parents. She agreed the Defendant had provided twenty-four-hour care for their parents since their father's stroke in August 2011. She said that their parents would be placed in a nursing home without the Defendant's care. She said that to her knowledge, the Defendant did not use drugs or drink alcohol. She said the Defendant had never been convicted of a crime. She said that the Defendant was protective of her and their sister and that she could rely on him.

On cross-examination, Ms. Dabney testified that sending her parents to a nursing home and hiring someone to live with them were options but that she did not know what type

of care her parents could afford. She said she could not move to Tennessee, and she would have to buy a new home if they lived with her in Virginia. She denied asking the Defendant about the charges because she did not talk to him about sex or his masturbation habits. Although she acknowledged that the Defendant possessed child pornography, she denied that he did anything to hurt a child. She said it concerned her that her brother watched recordings depicting the rape of five-year-old children.

The Defendant's parents were deposed before the sentencing hearing because of their health conditions. The depositions were received as a collective exhibit. Madeline Dabney testified that she was homebound and that the Defendant moved home after her husband suffered a stroke. She said that the Defendant cared for them and that her daughters lived too far away and had children. She said their other family members lived in New Jersey and California. She said that she suffered from chronic obstructive pulmonary disease (COPD) and pulmonary hypertension and that her only treatment option was a heart and lung transplant.

Ms. Dabney testified that the Defendant took her to her doctor's appointments because her husband, who also had a heart condition, could not drive. She said her husband suffered short-term memory loss and was relearning to write since the stroke. She said they did not have money to pay someone to care for them. She stated that if the Defendant were not able to care for them, they would probably go to a nursing home because she and her husband could not care for themselves.

Upton Dabney, Sr., testified that he had two daughters, who lived in Memphis and in Virginia. He said he suffered a stroke and was in a coma for two weeks while the doctors regulated his blood pressure and heart rate. He denied being able to drive and said the Defendant drove him and his wife. He said the Defendant performed household chores and helped with his medical rehabilitation.

Mr. Dabney testified that he and his wife did not have family members to care for them if the Defendant was sentenced to confinement. He said that the Defendant had lived with them since his stroke and that he provided full-time care. He said their income was primarily Social Security benefits and did not know if they could afford a nursing home or home health care. Although he knew the Defendant pleaded guilty to possession of child pornography, he did not know details about the case.

The trial court discredited the Defendant's testimony that the Defendant did not intentionally download images of child pornography, that the images came with his downloading adult pornography, and that he only watched a few of the images because of a morbid curiosity. The court found that the Defendant failed to take responsibility for his

possessing the child pornography. The court noted the discrepancies between Sergeant Demming's and the Defendant's testimony and credited Sergeant Demming's testimony. The court found that the psychosexual evaluation showed problems with the Defendant's truthfulness. Although the court recognized the Defendant's parents' deteriorating health and their need for the Defendant's care, it stated that they had no bearing on its sentencing determinations.

Although the trial court found that the Defendant had a good work history and a favorable education record, it found that confinement was necessary to avoid depreciating the seriousness of the offense and to deter others from engaging in similar conduct. The court stated that child pornography was a worldwide problem and that "people need to know it is a serious matter [and] that we, as a society, should not accept and . . . tolerate" it. The court found that the Defendant admitted his wrongful actions by pleading guilty.

The trial court found that the Defendant knowingly possessed images of child pornography based on the nature of the offense, the nature of the images involved, and the manner in which the Defendant obtained the images. The court said that a six-year prison sentence was justified. Although the Defendant and the State agreed to a six-year sentence, the court ordered one year's confinement and ten years on community corrections. This appeal followed.

**I**

The Defendant contends that his ten-year community corrections sentence is excessive because it exceeds the permitted sentencing range for the offense. Although the State concedes that ten years exceeds the sentence length specified in the plea agreement and that the trial court improperly increased the Defendant's sentence, it claims the issue is waived because the Defendant failed to object at the sentencing hearing. We conclude that the trial court erred by ordering a ten-year community corrections sentence.

The State argues that under Tennessee Rule of Appellate Procedure 36(a), this issue is waived because the Defendant did not object to the trial court's ordering a ten-year community corrections sentence. The Defendant, though, is not required to object to the court's sentencing determinations to preserve an appeal of the sentence.

The Tennessee Supreme Court adopted the present standard of review for sentencing in *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). The length of a sentence "within the appropriate statutory range [is] to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *Id.* at 708. In determining the proper sentence, the trial court must consider: (1) any evidence received at the trial and sentencing hearing, (2) the

presence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; *see State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986).

In imposing a sentence within the appropriate range of punishment for the defendant:

> [T]he court shall consider, but is not bound by, the following advisory sentencing guidelines:
>
> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c)(1)-(2) (2010). From this, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008) (quoting T.C.A. § 40-35-210(d)). "[A] presumption of reasonableness should be afforded to a sentence within the appropriate statutory range." *Bise*, 380 S.W.3d at 707.

Pursuant to the negotiated plea agreement, the Defendant pleaded guilty to a Class C felony as a Range I, standard offender with a six-year sentence and the manner of service to be determined by the trial court. The record reflects the court accepted the terms of the plea agreement during the plea submission hearing, and the State concedes that the court accepted the Range I sentence length and was bound by the six-year sentence. *See* Tenn R. Crim. P. 11(c)(3)-(4).

The trial court imposed a ten-year community corrections sentence for the Class C felony. Although the authorized sentence for a Class C felony is three to fifteen years, the Range I statutory sentence for a Class C felony is three to six years. *See* T.C.A. §§ 40-35-111, 40-35-112(a)(3), and 40-35-210(c) (stating that a trial court "shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated,

standard, persistent, career, or repeat violent offender"). We conclude that the maximum sentence permitted by statute and the plea agreement was six years, that once the court accepted the terms of the plea agreement, it was bound by the six-year sentence, and that the court erred by ordering a ten-year community corrections sentence.

## II

The Defendant contends that the trial court erred by ordering one year's confinement. He argues the court should have sentenced him only to community corrections. The State responds that the court did not abuse its discretion by ordering split confinement. We agree with the State.

Our supreme court has concluded that the abuse of discretion with a presumption of correctness standard in *Bise* applies to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). When determining if incarceration is appropriate, a trial court should consider if:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1) (2010); *see also State v. Hooper*, 29 S.W.3d 1, 5 (Tenn. 2000).

Relevant to the trial court's findings, Sergeant Demming's credited testimony shows that the Defendant admitted being interested in child pornography for a long time and having a special interest in rape depictions. The Defendant told the sergeant that he looked for pornographic images showing women who resembled his childhood crushes and that he masturbated while viewing the images. The Defendant frequented a website that showed others performing sexual acts and admitted watching what he believed was a minor female masturbating. The police found over 100 images of child pornography on his computer, and the Defendant did not deny downloading the images. The psychosexual evaluation showed "some problems" in the areas of sexual entitlement and finding children sexually attractive. The Defendant also showed signs of sexually assaultive behavior toward children and women.

We question the trial court's conclusion that the Defendant's parents' deteriorating health and dependence on the Defendant for their care had no bearing on its sentencing considerations. Although this should have been considered by the court during sentencing, we note it is only one factor among many and does not mean that it changes the sentencing outcome in this case. The court ordered one year's confinement because it was necessary to avoid depreciating the seriousness of the offense and to deter others from engaging in similar conduct. The court stated that "people need to know it is a serious matter [and] that we, as a society, should not accept and . . . tolerate" it. The evidence shows that the Defendant knowingly possessed and viewed images of child pornography. The Defendant, though, refused to accept responsibility for his possessing the images and claimed the images automatically downloaded to his computer with adult pornography. He denied intentionally downloading the images. The court discredited the Defendant's testimony, and his lack of candor and truthfulness and refusal to accept responsibility weigh against a full community corrections sentence. *See State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999). The Defendant has not established that the court abused its discretion by ordering one year's confinement and is not entitled to relief.

In consideration of the foregoing and the record as a whole, we reverse the ten-year community corrections sentence and remand the case for entry of a judgment reflecting a sentence of six years in community corrections beginning with one year of confinement. *See* T.C.A. § 40-36-302(b) (2010); *State v. Jimmy D. Johnson*, No. 03C01-9602-CC-00062, slip op. at 4-5 (Tenn. Crim. App. Oct. 16, 1997).

_____
JOSEPH M. TIPTON, PRESIDING JUDGE